**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**PHILIP L. PROCTOR,**

    **Plaintiff,**　　　　　　　　　　　　**Case No. 2:07-cv-839**

  v.　　　　　　　　　　　　　　　　　　**Judge Graham**

**EDUCATIONAL CREDIT**　　　　　　　**Magistrate Judge King**
**MANAGEMENT CORPORATION,**

    **Defendant/Third Party Plaintiff**

  v.

**ARNE DUNCAN, SECRETARY OF THE
UNITED STATES DEPARTMENT OF
EDUCATION,**

    **Third Party Defendant.**

## ORDER

    This matter is presently before the court on defendant Wells Fargo's Motion for Sanctions pursuant to Fed. R. Civ. P. 11.  On August 10, 2010 the court issued an Opinion and Order granting defendant Wells Fargo's motion for summary judgment. (Doc. 126).  The court also addressed the parties' cross-motions for sanctions.  Plaintiff's motion for sanctions was denied for failure to comply with the "safe harbor" rule of Fed. R. Civ. P. 11(c)(1)(A) and the rule's requirement that a motion for sanctions be filed as a separate pleading.  The court then concluded that Wells Fargo's motion for sanctions was well founded and retained jurisdiction to determine the amount of sanctions, if any, that should be awarded.  The parties have fully briefed

1

the issue of sanctions and the matter is now before the court for consideration.[1]

I.     **Factual and Procedural Background**

The factual and procedural background of this case is set forth in detail in this court's opinion granting summary judgment. However, a brief recitation of the pertinent facts and background is necessary.

Plaintiff financed his higher education with sixteen guaranteed student loans, three of which were guaranteed by the Higher Education Assistance Foundation ("HEAF"). HEAF was a Minnesota nonprofit corporation that qualified as a "guaranty agency" within the meaning of 20 U.S.C. §1085(j). (Adams Declaration at p. ¶10, doc. 103-1). In March of 1994, HEAF adopted a plan of dissolution, which involved the creation of the HEAF Liquidating Trust (the "Trust") (Id at ¶11). Between April and August of 1993, prior to the adoption of the Trust, HEAF assigned three of Proctor's loans that it guaranteed to the third party defendant Department of Education (DOE). (doc. 103-4 p. 15). In 1998, several years after Proctor's loans were transferred out of HEAF, Wells Fargo also became a trustee of the Trust. On February 28, 2001, the Trust was terminated and ceased legal existence.

Proctor defaulted on his loans, the guarantors paid the lenders, and then sought payment from Proctor. The DOE obtained an administrative wage garnishment against Proctor which was upheld by a hearing officer at an administrative garnishment hearing. In 2002, Proctor filed suit in the District Court for the Southern District of Ohio against the DOE challenging the administrative wage garnishment (Case No. C2-02-252, hereinafter "2002 case"). In the 2002

---

[1] Plaintiff also moved for relief from judgment pursuant to Fed. R. Civ. P. 60(b). In his motion, plaintiff set forth various arguments against the imposition of sanctions and the court has considered those arguments in ruling on Wells Fargo's motion.

case, Proctor also made tort claims against the DOE pursuant to the Federal Tort Claims Act ("FTCA") for defamation, invasion of privacy, and intentional infliction of emotional distress. The basis for plaintiff's tort claims was that the DOE had made false statements to his employer and others that Proctor was delinquent on his promissory notes and loans and these false statements had caused him injury. Proctor sought monetary damages as well as an order enjoining the adminstrative wage garnishment. The DOE counterclaimed for the amounts due, plus interest.

By opinion dated March 23, 2005, Magistrate Judge King upheld the administrative hearing officer's decision ordering wage garnishment and concluded that it lacked jurisdiction to consider Proctor's claims. (doc. 103-4). The court also granted summary judgment in favor of the DOE in the amount of $84,359.22, noting that Proctor failed to produce any documentary evidence to support his contention that he paid his loans in full by 1995. The court specifically found that three of Proctor's loans which the DOE held were transferred to the DOE from HEAF between April 20, 1993 and August 1, 1993. Thus, in the 2002 case, Magistrate Judge King determined that three of the HEAF loans were transferred not only before the HEAF Liquidating Trust came into being but also long before Wells Fargo became a trustee of the Trust.

On August 23, 2007, Proctor initiated the instant case against various defendants including HEAF. Wells Fargo was joined as a party on March 11. 2009. In the complaint against Wells Fargo, Proctor made allegations and claims nearly identical to those made in the 2002 case. Specifically, Proctor alleged that during the 2002 case, he sought discovery of his payment records from the DOE, learned that various guaranty agencies held those records, and was denied the ability to join the guaranty agencies, including Wells Fargo in the 2002 case. He

3

further alleged that Wells Fargo, as trustee of the HEAF Trust, had his payment histories and violated 5 U.S.C. §552a in failing to produce his payment histories.  As in the 2002 case, plaintiff also brought claims for false claims pursuant to 31 U.S.C. §3729 and 31 U.S.C. §3730, civil rights claims, and tort claims pursuant to the Federal Tort Claims Act.  Plaintiff's complaint against Wells Fargo was premised on the plaintiff's belief that Wells Fargo, as trustee of HEAF, had his payment records and failed to produce them.  Plaintiff also claimed that Wells Fargo knowingly submitted false claims for payment of his loans to the government and made false and defamatory representations to plaintiff's employer that plaintiff owed money on the loans.  The underlying factual assertion supporting plaintiff's claims was that he had paid his student loans in full, despite having a final judgment from this court finding that he did in fact continue to owe money on these very student loans.

Approximately one month after Wells Fargo was added as a party to this action, and before an answer was due, Wells Fargo attorney Joel Wesp informed plaintiff that a review of the amended complaint clearly indicated that "the previous case resulted in a final adverse judgment against you for the very claims for relief that you are asserting in the present case." (doc. 111-1).  Wesp specifically requested that Proctor dismiss Wells Fargo on the grounds that the claims were barred by res judicata and/or collateral estoppel and that the failure to dismiss Wells Fargo would lead to the filing of a Rule 11 motion for sanctions. (Id).  Proctor did not dismiss the claim.  One week later, on April 14, 2009, Wesp again raised the issue of *res judicata* and asked that Wells Fargo be dismissed.  In addition, Wesp informed Proctor that Wells Fargo "never processed, administered, or attempted to collect any student loans."  (doc. 111-12).  As Wells Fargo was being sued by Proctor for its alleged role in processing,

4

administering or collecting student loans, Wesp had now provided Proctor with two distinct reasons why his claim against Wells Fargo should be dismissed. Finally, on May 4, 2009, Proctor was sent a third letter by Wesp which provided a third reason to dismiss Wells Fargo as a defendant: In the 2002 case, Magistrate King had determined that "All three HEAF loans in question in [the instant case] *were assigned by HEAF to DOE before HEAF was liquidated and thus before Wells Fargo became the Trustee under the HEAF liquidating Trust Agreement on March 31, 1994!*" (doc. 111-3, emphasis in original). Despite being reminded that Wells Fargo was not even involved as trustee during any time at which Proctor's loans were administered by HEAF or the HEAF liquidating trust, Proctor continued to pursue his claim against Wells Fargo.

In granting summary judgment in favor of Wells Fargo in this case, the court held that plaintiff's claim under 5 U.S.C. §522a failed because Wells Fargo was not an "agency" within the meaning of the statute, Proctor had failed to produce evidence that Wells Fargo was a government contractor, and that Proctor's claim was barred by the two year statute of limitations found at 5 U.S.C. §522a(g)(5). The court found that the remaining claims were barred on the grounds of issue preclusion. Specifically, all of plaintiff's claims were based on the premise that plaintiff's loans were paid in full and that defendants made false statements to the contrary. Whereas, in the 2002 case, the court had already determined that plaintiff's loans were not paid in full. Accordingly, summary judgment on the grounds of issue preclusion was warranted.

**B.      Legal Standard for Motion for Sanctions**

     Fed. R. Civ. P. 11(b) provides:

     Representations to the Court. By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--

>   (1)   it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
>   (2)   the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
>   (3)   the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>   (4)   the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Pursuant to Fed. R. Civ. P. 11(c)(1), if the court determines that Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." In the Sixth Circuit, "the test for imposition of Rule 11 sanctions is whether the individual's conduct was reasonable under the circumstances." Tropf v. Fidelity Nat. Title Ins. Co., 289 F.3d 929 (6th Cir. 2002). A district court retains considerable discretion in determining an appropriate sanction under Rule 11. See Uszak v. Yellow Transp., Inc., No. 1:06-cv-00837, 2007 U.S. Dist. LEXIS 51200 (N.D. Ohio July 13, 2007). However, there are several factors that a court must consider in determining appropriate sanctions. Id. First, the court must look at the primary goal of deterrence, and therefore should "impose the least severe sanction that is likely to deter." Id. The court must also consider whether the party seeking sanctions acted to mitigate its damages and whether the attorney to be sanctioned is able to pay a monetary sanction. Id.

**C.     Legal Discussion**

The court found that the grounds on which it granted summary judgment in favor of

Wells Fargo were the very same grounds Wells Fargo had cited in its repeated requests to Proctor to dismiss it as a defendant in this case. Under these circumstances, the court concludes that the plaintiff's conduct in pursuing his claim against Wells Fargo was unreasonable. Huntsman, 2010 U.S. App. LEXIS 10948 (6th Cir. May 28, 2010) (sanctions appropriate where counsel's unreasonable conduct included filing the complaint after being informed by defense counsel that the claims were barred by collateral estoppel and that defendants would seek sanctions); Kennedy v. Harbor Corp., Inc., No. L89-50003-CA,1990 U.S. Dist. LEXIS 19800 (W.D. Mich. Jan. 11, 1990) (citing 2A Moore's Federal Practice P11.02, "Rule 11 sanctions certainly should be imposed for the filing of motions and causes of action plainly foreclosed by long-standing and authoritative precedent and for actions brought in spite of the obvious preclusive effect of prior litigation involving the same party"); McNeill v. Wayne County, No. 08-10658, 2009 U.S. Dist. LEXIS 23406 (E.D. Mich. Mar. 23, 2009)(it would be unreasonable (and therefore sanctionable) conduct for plaintiff to seek to relitigate claims asserted in a prior suit); Isley v. Ford Motor Co., 371 F. Supp. 2d. 912, 917(E.D. Mich 2005) (sanctions appropriate where plaintiff brought claim clearly barred by collateral estoppel).

In accordance with this court's earlier order, defendant has submitted evidence of the fees it incurred in defending plaintiff's claim against it. Attorney Joel Wesp has submitted an affidavit, and supporting documentation, establishing that Wells Fargo incurred $29,330.28 in attorneys fees and additional expenses in the amount of $745.26. These expenses and fees were incurred after May 4, 2009 – the date on which Mr. Wesp pointed out to Proctor that Wells Fargo was not a trustee of HEAF at any point in time during which Proctors loans were administered by HEAF. Wells Fargo has also submitted an affidavit from attorney Jud R.

Mauger who avers that the billing rate of $200.00 per hour, and the amount of time spent on the matter (165.09 hours over 14 months) were reasonable and necessary.

In response, plaintiff makes several arguments[2] against the imposition of sanctions: 1) Wells Fargo did not identify the pleading to be withdrawn and did not follow proper procedures for Rule 11 motions for sanctions; 2) plaintiff had permission from the court to proceed against Wells Fargo; 3) defendant may not receive any attorney's fees related to time spent preparing, submitting, and responding to discovery; 4) attorney's fees may not be awarded for time spent opposing the signing of a waiver of service of summons; 5) an award of fees to make defendant whole is not allowed under Rule 11; 6) Wells Fargo did not timely disclose an expert witness as to the reasonableness and necessity of attorney's fees incurred; 7) plaintiff was making a good faith argument for the establishment of a new law regarding student loans.  The court will address each argument in turn.

    A.    **Plaintiff's Arguments Against Sanctions**

        1.    **Wells Fargo did not identify the pleading to be withdrawn**

Plaintiff asserts that Wells Fargo's motion for sanctions is procedurally defective because it does not identify which pleading should be withdrawn.  Plaintiff's argument is without merit.  It is clear from the defendant's motion that the offending pleading was the amended complaint filed against it which brought Wells Fargo into this action.  Plaintiff was repeatedly informed *via* letter from defense counsel that he needed to dismiss the complaint against Wells Fargo or sanctions would be sought.  Plaintiff's argument is disingenuous and provides an example of just

---

[2] Plaintiff's arguments are scattered throughout several pleadings all of which have been considered by the court in ruling on Wells Fargo's Motion for Sanctions.

8

the sort of frivolous conduct plaintiff has engaged in and which sanctions are meant to deter.

### 2. Plaintiff had permission from the court to proceed against Wells Fargo

Plaintiff next argues that because the government and the court granted it permission to add Wells Fargo as a party to the case, the court cannot conclude that plaintiff's case against Wells Fargo was frivolous or subject to Rule 11 sanctions. Courts are to employ a liberal standard in allowing parties to amend complaints. Boling v. Corr. Med. Servs., 07-11752, 2007 U.S. Dist. LEXIS 80479 (E.D. Mich. Oct. 31, 2007). Plaintiff's motion to amend the complaint was without objection by any of the defendants. Pursuant to Fed. R. Civ. P. 15, the court shall give leave to file an amended complaint "freely when justice so requires." In his unopposed motion to amend the complaint, plaintiff asserted that he had only recently learned that Wells Fargo had been a trustee of HEAF and for this reason needed to include Wells Fargo so that all necessary parties would be joined. In granting plaintiff's motion to amend, the court was not deciding that plaintiff had a claim against Wells Fargo, but was merely following the liberal standard employed in allowing pleadings to be amended. Moreover, plaintiff has cited no case law that would support his unsubstantiated theory that because the government granted him permission to proceed with his false claims allegation, that this somehow insulates him from a finding that his suit was frivolous.

### 3. Attorney's fees related to discovery

Plaintiff cites Fed. R. Civ. P. 11(d) for the proposition that attorney's fees related to discovery are not recoverable in a Rule 11 motion for sanctions. This section of Rule 11 provides: "This rules does not apply to disclosures and discovery requests, responses, objections, and motion under Rules 26 through 37." Fed. R. Civ. P. 11(d). Plaintiff interprets this

subdivision of the rule to bar any sanctions related to any fees associated with discovery but fails to cite any case law in support of this interpretation.  The court disagrees with plaintiff's interpretation. Fed. R. Civ. P. 26-37 govern discovery and the resolution of disputes related specifically to the discovery process.  Thus, sanctions related to improper discovery requests or failures are governed by Fed. R. Civ. P. 26-37 and not Fed. R. Civ. P. 11.  See Weinberg v. Weinberg (In re Weinberg), 163 B.R. 681 (E.D. NY 1994) (Although Rule 11 governs all pleadings and papers filed with the Court and might be relevant to the issues at bar, the Court holds that an improper discovery request is more correctly governed by Federal Rule 26(g)). However, Wells Fargo is not seeking sanctions and attorneys fees for discovery abuses but rather is seeking attorneys fees for costs incurred in defending this case, which include costs related to completion of discovery.

Accordingly, Rule 11 does not bar Wells Fargo from seeking fees related to discovery which were naturally incurred as a result of defending this suit.  See Gaskell v. Weir, 10 F.3d 626 (9th Cir. 1993) (where the original complaint is the improper pleading, all attorney fees reasonably incurred in defending against the claims asserted in the complaint form the proper basis for sanctions); Chambers v. NASCO, Inc., 501 U.S. 32 (1991) (a violation of Rule 11 could conceivably warrant an imposition of fees covering the entire litigation, if, for example, a complaint or answer was filed in violation of Rule 11).

### 4. Attorneys fees related to waiver of summons

Plaintiff asserts that defendant cannot recover attorneys fees related to "opposing the signing of a waiver of service." (Doc. 131, p. 2).  Plaintiff states that $1,260.00 of the fees sought by defendant are related to opposing a waiver of service. (Id). .  The attorneys fees information

submitted by defendant provides two different types of entries related to the service of summons. The first type of entry occurred between April 6, 2009 and April 16, 2009 and these six hours relate to correspondence with plaintiff regarding the waiver of service form and the transmission of the waiver form to the plaintiff. (Doc. 128-2, p.2-3). The second type of entry occurred between May 20, 2009 and May 29, 2009 and these 5 hours relate to preparing a response to plaintiff's motion "that service Defendant Wells Fargo be deemed complete."(Doc. 73);(Doc. 128-2, p. 4-5). Plaintiff's motion was filed *after* Wells Fargo filed its Answer and stated that because Wells Fargo had not returned the waiver of service of summons form it should be deemed served as of the date of the filed Answer. (Doc. 73). On May 31, 2009, defendant filed a simple two page response which included a copy of the email and signed waiver of service form which was sent to plaintiff on April 14, 2009. (Doc. 79). Although plaintiff attempts to cast these facts as though defendant opposed the waiver of service form and therefore owes plaintiff attorneys fees, the facts do not support plaintiff's position. Plaintiff's mischaracterization of the defendant's attorney's fees related to the waiver of service of summons as being obstructionist is yet another example of plaintiff's sanctionable conduct.

### 5. Wells Fargo did not timely disclose an expert witness as to the reasonableness and necessity of attorney's fees incurred

Plaintiff's next argument against the imposition of sanctions is that defendant is "procedurally barred from an award of attorney's fees...because they did not list an attorney as an expert witness in discovery." (Doc. 114, p. 7). Plaintiff asserts that both he and Wells Fargo specifically chose not to identify an attorney witness to corroborate fees and therefore both gave up the right to obtain fees in this case. Plaintiff cites no case law in support of his proposition that an expert witness must be identified as part of discovery in order for defendant to obtain

attorneys fees as sanctions and his argument is not persuasive. Indeed, it is not even necessary for defendant to provide an expert witness regarding the reasonableness of its attorneys fees because the court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Gurary v. Winehouse, 270 F. Supp. 2d 425, 428 (S.D. NY 2003)(quoting Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303-04 (11th Cir. 1988)). Defendant was not obligated to disclose, as part of initial discovery, an expert witness for attorney's fees in order to be awarded attorney's fees as part of the court's inherent authority to impose sanctions. Plaintiff's argument to the contrary is without merit.

### 6. Plaintiff was making a good faith argument for the establishment of a new law regarding student loans.

Rule 11 provides that sanctions are not appropriate where: "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Plaintiff asserts that sanctions are not appropriate because he presented a good faith argument for the establishment of new law regarding student loans. Specifically, plaintiff argues that he was attempting to establish that student loan cases should be divided into two parts: the first where the Department of Education litigates recovery against the borrower; the second would involve litigation for the production of records and the potential for subrogation or indemnification from the guaranty agency or record keeping agency. Plaintiff also argues that he was under the impression in the first case that he could not seek to obtain his records from the guaranty agencies in that case and believed he had permission to seek them in a second case.

Plaintiff's attempt to recast his amended complaint as though it contained only claims for subrogation or indemnification against Wells Fargo fails.  Although he now argues that he was never disputing his liability to the Department of Education nor this court's earlier decision holding that he still owed the student loans, his entire complaint is premised on the factual assertion that he paid those loans.   It was also premised on his unsupported belief that Wells Fargo had some duty to maintain records of his loans despite the fact that the loans were transferred out of the HEAF Liquidating Trust *prior* to Wells Fargo's involvement as a trustee.  Plaintiff never provided the court with any evidence that Wells Fargo had any duty to him.  In order to succeed in his complaint, plaintiff had to establish that he had paid his loans and this was very clearly barred by the doctrine of issue preclusion.  Plaintiff has failed to show that he was making a nonfrivolous attempt at establishing new law regarding student loans.

### 7.     An award of fees to make defendant whole is not allowed under Rule 11.

Plaintiff also argues that because defendant seeks all attorney's fees incurred as a result of defending the suit, and failed to specifically cite what conduct needs to be deterred or how much such deterrence would cost, defendant must be denied any attorney's fees whatsoever.  Plaintiff goes on to assert that defendant was somehow required to establish that plaintiff would file suit against it again in order to show that deterrence was necessary.  Plaintiff fails to cite to any case law in support of his arguments.

Plaintiff is correct only in that the goal of sanctions is deterrence and punishment rather than compensation to the defendant. See, Rentz v. Dynasty Apparel Indus., 556 F.3d 389, 394 (6th Cir. 2009).  The remainder of the plaintiff's arguments relating to the defendant's burden to establish the need for, or the amount necessary to obtain, deterrence are without merit.

**B.     Sanctions**

Defendant seeks all attorney's fees and costs incurred after it informed the plaintiff that his claims were barred by collateral estoppel.  The court finds that when Proctor was informed not only that his claims were barred by collateral estoppel, but that Wells Fargo was not even the trustee when Proctor's loans were part of HEAF, he was on notice that his claims against Wells Fargo were frivolous.  Thus, the court will consider defendant's request for attorney's fees as of May 4, 2009 – the date on which Wells Fargo provided three incontrovertible reasons to dismiss it from the case: collateral estoppel; the fact that Wells Fargo never processed, administered, or attempted to collect his student loans; and the fact that all of plaintiff's loans were transferred out of HEAF prior to the formation of the trust and Wells Fargo's involvement therein.[3]

"The starting point for a determination of attorney's fees, the lodestar calculation, is the product of the number of hours reasonably expended in responding to the frivolous paper times an hourly fee based on the prevailing market rate." Imwalle v. Reliance Med. Prods., 515 F.3d 531, 551 (6th Cir. 2008).  A fee or cost is not reasonably incurred "if the injured party has not exercised its 'duty to mitigate costs by not overstaffing, overresearching or overdiscovering clearly meritless claims.'" Persyn v. United States, 36 Fed. Cl. 708, 714 (Ct. Fed. Claims 1996) (quoting White v. GM Corp., 908 F.2d 675, 684 (10th Cir. 1990)).  Defendant has submitted documentation establishing that Wells Fargo's attorneys expended 146.6 hours in defending this suit at a rate of $200.00 per hour for a total of $29,330.28.  He has also provided an affidavit from attorney Jud R. Mauger who avers that he has reviewed the litigation file, pleadings and

---

[3] Thus the court is not considering any of defendant's fees related to the waiver of service of summons, except for those fees incurred as a result of having to respond to the plaintiff's baseless and confusing motion to have service be deemed complete.

14

billing records of the instant case and that based upon the complexity of legal and factual issues raised by plaintiff, the hours expended and amount billed were reasonable. (Doc. 128-4, ¶¶5, 8-9). The court finds that the rates charged and time expended were reasonable and necessary.

However, before awarding a party's total costs and fees as sanctions, the court should "consider the offending party's ability to pay, want of diligence, and the amount necessary and effective to bring about deterrence." Elsman v. Std. Fed. Bank, 238 F. Supp. 2d 903, 910 (E.D. Mich. 1993); Martins v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332 (11th Cir. 2002) (must consider financial condition of sanctioned party). A district court may also consider mitigating factors, such as the "attorney's history of filing frivolous actions or alternatively, his or her good reputation; the defendant's need for compensation; the degree of frivolousness, recognizing that cases do lie along a continuum, rather than neatly falling into either the frivolous or non-frivolous category; and reluctance of the court to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191 (3d Cir. 1988). Cognizant of its duty to consider plaintiff's ability to pay sanctions, this court ordered plaintiff to provide evidence, in the form of affidavits or otherwise, of any mitigating factors for consideration and of his ability to pay monetary sanctions. (doc. 126).

Plaintiff has provided the court with a declaration of mitigating factors and ability to pay. (doc. 130). The plaintiff does not set forth any true mitigating factors, but rather uses his declaration to reiterate his arguments for relief from judgment and against sanctions in general. As regards his ability to pay, the plaintiff states that he has paid $30,000.00 to the Department of Education and still owes $80,000.00. (Id ¶6). He further states that he has had to cash out his

15

retirement in order to keep up with his debt and believes that another large award would force him into bankruptcy. (Id ¶ 7).  The plaintiff does not provide any information regarding his current employment except to state that he is in private practice. (Id ¶ 9).  Plaintiff does not indicate his annual income, whether he has additional sources of income, other outstanding obligations, or whether he has any dependents.  It is the plaintiff's burden to come forward with evidence of his financial status. Colton v. Memorial Drive Trust, No. 92-1006, 1993 U.S. App. LEXIS 2388 (6th Cir., Feb. 8, 1993). ("Although ability to pay must be considered by a district court when assessing sanctions under Fed. R. Civ. P. 11, inability to pay should be treated like an affirmative defense, with the burden upon the party being sanctioned to come forward with evidence of their financial status.").  Plaintiff has failed to come forward with the requisite evidence to establish that he is unable to pay monetary sanctions. Moreover, plaintiff has had no trouble affording the costs of filing two cases in this court, filing appeals, and filing many motions in this court. Thus the court finds that plaintiff is able to pay the sanctions as set forth below.  See, Balcar v. Bell & Assocs., LLC, 295 F. Supp. 2d 635, 641 (N.D. W.V. 2003)(court considered the *pro se* plaintiff's ability to file several cases, appeals and filings in determining its financial ability to pay sanctions).

      Plaintiff learned during the 2002 case that his loans were transferred out of HEAF prior to the formation of the liquidating trust and prior to Wells Fargo's involvement in the trust. This court thereafter determined that the DOE had produced sufficient evidence to establish that the plaintiff was obligated on his loans to the DOE and entered judgment accordingly.  After appealing his 2002 case, and seeking certiorari from the Supreme Court, plaintiff filed the instant case alleging nearly identical claims as in the 2002 case against Wells Fargo. With the exception

of the 5 U.S.C. §522a claim (which was clearly barred by the statute of limitations), every single one of plaintiff's claims against Wells Fargo required a finding that he had paid his loans in full. This was clearly barred by collateral estoppel. The plaintiff has continued to create additional work for defendant's counsel, by filing various motions, including a motion to strike defendant's motion for sanctions and a procedurally deficient motion for his own sanctions (doc. 114), a motion to strike defendant's declaration, exhibits and affidavit (doc. 131) and a motion for relief from judgment (doc. 132). The court has been repeatedly called upon to handle plaintiff's claims. Plaintiff is a licensed and practicing attorney and his conduct requires that he be sanctioned in the hope that sanctions will deter him from engaging in future repetitive and frivolous litigation in this court.

      The court has attempted to balance the need to deter plaintiff with the fairness of ordering him to pay the large (though reasonable) sum of $29,827.12 requested by Wells Fargo. Plaintiff has presented no mitigating factors.  He has continued to assert further arguments in an effort to have the court's decision in this case set aside and to oppose the award of sanctions.  The degree of frivolousness of plaintiff's claim against Wells Fargo is extreme.  The fact that plaintiff is proceeding *pro se* is not a mitigating factor because he is licensed attorney.  Plaintiff has not presented any evidence of good reputation as a mitigating factor.  Imposing sanctions in this case would not be likely to have a chilling effect on the enthusiasm or creativity of the plaintiff or any member of the bar of this court in pursuing factual or legal theories. Wells Fargo is a solvent financial institution and undoubtedly can afford to pay the fees charged by its counsel.  By the same token, plaintiff has presented no evidence that he is unable to reimburse Wells Fargo for the expenses that his unjustified actions have caused them to incur.   Not only has Proctor

repeatedly asserted frivolous claims in this case, he has done so in other cases and has been sanctioned for such conduct.  See, Peterman v. Stewart, Decision and Entry dated Nov. 22, 2005, Case No. 02-CV-C-08-449, Delaware County Court of Common Pleas, Delaware County, Ohio (attorney Philip Proctor jointly sanctioned with plaintiff in the amount of $31,995.90 for filing frivolous claims).  Despite being heavily sanctioned by the Delaware County Court of Common Pleas, Proctor has not been deterred from filing another frivolous action.

Accordingly, the court ORDERS plaintiff to pay the entire requested amount, for a total of $29,827.12.  Given Proctor's history of filing frivolous claims, the court is concerned that anything less will simply not deter plaintiff from filing another lawsuit on issues already determined by this court.  See Rentz v. Dynasty Apparel Indus., 556 F.3d 389, 399 (6th Cir. 2009) (effective deterrence under Rule 11 sometimes requires compensating the victim for attorney fees arising from abusive litigation.)

**D.     Conclusion**

Defendant's motion for sanctions (doc. 111) is GRANTED. Plaintiff is ORDERED to pay $29,827.12 in fees and costs to defendant.  Plaintiff is not required to pay this amount in a lump sum to defendants.  The parties are ORDERED to create a payment schedule and to file the same with this court within seven (7) days.  Plaintiff's Motion to Submit to Settlement Week or in the Alternative, for Court Conference (doc. 140) is denied as moot.

IT IS SO ORDERED.


 S/ James L. Graham
James L. Graham
UNITED STATES DISTRICT COURT

Date: Nov. 29, 2010